UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MAJ BARTLETT LUDLOW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 10-0236 (HKK) |
| | ) | |
| RAYMOND E. MABUS, JR., Secretary of the Navy, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant, through counsel, the United States Attorney for the District of Columbia,
respectfully moves for summary judgment pursuant to Fed R. Civ. P. 56. No genuine issue of
material fact exists, and Defendant is entitled to judgment as a matter of law. In support hereof,
Defendant respectfully refers the Court to the attached memorandum of points and authorities,
statement of material facts not in genuine dispute, attachments, and proposed order.

Respectfully submitted,

RONALD C. MACHEN JR.,Bar # 447889
United States Attorney
for the District of Columbia

RUDOLPH CONTRERAS ,Bar # 434122
Chief, Civil Division

By: _____/s_____
BENTON PETERSON ,Bar #1029849
Assistant U.S. Attorney
555 4th Street, N.W.
Washington, D.C. 20530

(202) 514-7238
Benton. Peterson@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MAJ BARTLETT LUDLOW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 10-0236 (HKK) |
| | ) | |
| RAYMOND E. MABUS, JR., Secretary of the Navy, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Pursuant to the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 56, Defendant respectfully requests the Court to grant Defendant Secretary of the Navy's motion for summary judgment. The administrative record establishes that the Defendant is entitled to summary judgment because the Board for Correction of Naval Records (BCNR) decision to deny Major Ludlow's (Plaintiff) request for the correction of his naval record was supported by substantial evidence and was not arbitrary, capricious, or otherwise contrary to law.

**I.      INTRODUCTION.**

Plaintiff seeks judicial review of the BCNR decision denying his request to remove an adverse fitness report and references to his failure to be selected for promotion by the Fiscal Year 2007 (FY07) Lieutenant Colonel (LtCol) Promotion Selection Board from his military record and to reinstate him to the FY07 LtCol Promotion list pursuant to 28 U.S.C. § 1331 and the Administrative Procedures Act (APA), 5 U.S.C. § 702, et seq.

Plaintiff contends that the BCNR decision to deny him relief failed to utilize the proper regulatory standard of review. Specifically, Plaintiff states when the BCNR considered whether

to remove the contents of his adverse fitness report from his record it utilized a "sufficient objectivity" standard rather than determining whether the contents were "incontrovertible matters of fact."

As a result of this alleged procedural error, Plaintiff claims he was so prejudiced that subsequent promotion boards failed to select him for promotion. Having sought unsuccessfully the correction of this error through the BCNR under 10 U.S.C. § 1552, Plaintiff asks this Court to declare that the BCNR decision denying his request for relief was in error and to remand the case back to the BCNR to correct the alleged error or in the alternative to order the BCNR to remove the adverse fitness report, all references of his failure to be selected by the FY07 LtCol Selection Board, and to reinstate him to the FY07 LtCol Promotion List.

Contrary to Plaintiff's assertions, the standard of review for fitness report appeals is whether an applicant has produced sufficient evidence to prove there was probable material error, substantive inaccuracy, or injustice in the report. Marine Corps Order (MCO) 1610.11C, 10(a). It is clear from the record that the BCNR applied the correct standard of review and that Plaintiff has failed to overcome the presumption that his adverse fitness report was administratively correct, procedurally complete, and valid.

For the following reasons, this Court should enter judgment for the Defendant.

## II.      STATEMENT OF FACTS.

Defendant respectfully refers the Court to Defendant's Statement of Material Facts to Which There is No Genuine Dispute filed simultaneously herewith.

## III. STATUTORY AND REGULATORY BACKGROUND OF THE BCNR

## A. PURPOSE AND AUTHORITY

The Corrections Board is established and composed under 10 U.S.C. §1552. *See* 32

C.F.R. § 723.2. The Secretary of the Navy is governed, in the correction of military records, by

10 U.S.C. § 1552, which states in pertinent part:

> The Secretary of a military department may correct any military record of the
> Secretary's department when the Secretary considers it necessary to correct an
> error or remove an injustice…. [S]uch corrections shall be made by the Secretary
> acting through boards of civilians of the executive part of that military
> department.  10 U.S.C. § 1552(a)(1) (2005).

Additionally, "[c]orrections under this section shall be made under procedures established

by the Secretary concerned." 10 U.S.C. § 1552(a)(3) (2005).  The BCNR's powers are delineated

by 32 C.F.R. §§ 723.1-11. The regulations set up procedures for correction of Naval and Marine

Corps records by the Secretary of the Navy acting through the BCNR to remedy error or

injustice. 32 C.F.R. § 723.1.

## B. GENERAL PROCEDURES OF THE BCNR.

The Secretary of the Navy has promulgated procedures for making application and the

consideration of applications for correction of military records through the BCNR. The BCNR's

function is to consider applications properly before it for the purpose of  determining the

existence of error or injustice in the naval records of current and former members of the Navy

and Marine Corps, to make recommendations to the Secretary or to take corrective action on the

Secretary's behalf when authorized. 32 C.F.R. § 723.2(b).

Once the Secretary fairly considers all the evidence in the record, he is "free to draw his

own reasonable inferences and conclusions from the evidence before him." *See Mudd v. Caldera,*

134 F. Supp. 2d 138, 143 (D.D.C. 2001) (*citing Mail Order Ass'n of America v. U.S.*

*Postal Serv.*, 2 F.3d 408, 421 (D.C. Cir. 1993)). All the Secretary must do is provide a rational

explanation for the decision based on the administrative record. *See* 5 U.S.C. § 706(2)(E).

## C. SPECIFIC ACTION OF THE BCNR AND DECISION REQUIREMENTS.

If the Board denies relief, federal regulations require that it put that decision in "writing

and include a brief statement of the grounds for denial." 32 C.F.R. § 723. 3(e)(3). That statement:

shall include the reasons for the determination that relief should not be granted, including the

applicant's claims of constitutional, statutory and/or  regulatory violations that were rejected,

together with all the essential facts upon which the denial is based, including, if applicable,

factors required by regulation to be considered for determination of the character of and reason

for discharge. 32 C.F.R. § 723.3(e)(4).

The Board is required to respond to arguments raised by the applicant, which do not

appear frivolous on their face and could affect the BCNR's ultimate disposition. *See Calloway v.*

*Brownlee*, 366 F. Supp. 2d 43, 55 (D.D.C. 2005). A reviewing court should "uphold a decision of

less than ideal clarity if  the agency's path may reasonably be discerned." *Miller v. Lehman*, 801

F.2d 492, 497 (D.C. Cir. 1986) (*citing Bowman Transp., Inc. v. Arkansas-Best Motor Freight*

*System*, 419 U.S. 281, 286 (1974)).  All that is required is that the agency's decisions "minimally

contain a rational connection between the facts found and the choice made." *Motor Vehicle*

*Manufacturers Ass'n v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (*citation*

*omitted*); *Frizelle v. Slater*, 111 F.3d 172, 176 (D.C. Cir. 1997), *Kreis v. Sec'y of Air Force*, 866

F.2d 1508, 1514-15 (D.C. Cir. 1989); *Miller v. Lehman*, 801 F.2d 492, 497 (D.C.

Cir. 1986). In addition, "if the necessary articulation of basis for administrative action can be

discerned by reference to clearly relevant sources other than a formal statement of reasons, [the

court] will make the reference." *Miller*, 801 F.2d at 497 (*quoting Environmental Defense Fund*, *Inc. v. EPA*, 465 F.2d 528, 537 (D.C. Cir. 1972)).

The BCNR may deny a petition without a hearing if it determines that the evidence of record fails to demonstrate the existence of probable material error or injustice. 32 C.F.R. § 723.3(e)(1)&(2). In making that decision, the BCNR may rely on a presumption of regularity to support the official actions of public officers and, in the absence of substantial evidence to the contrary, will presume that they have properly discharged their official duties. 32 C.F.R. § 723.3(e)(2).

## IV.    STANDARD OF REVIEW

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56.  When ruling on a Rule 56 motion, the Court must view the evidence in the light most favorable to the non-moving party.  *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006) (*citing Reeves v. Sanderson Plumbing Prods*., 530 U.S. 133, 150 (2000)). The Court must also draw "all justifiable inferences" in the non-moving party's favor and accept the non-moving party's evidence as true.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). The non-moving party, however, cannot rely on "mere allegations or denials," *Burke v. Gould*, 286 F.3d 513, 517 (D.C. Cir. 2002)(*quoting Anderson* 477 U.S. at 248) (internal quotation and citation omitted), because "conclusory allegations unsupported by factual data will not create a triable issue of fact." *Pub. Citizen Health Research Group v. FDA*, 185 F.3d 898, 908 (D.C. Cir. 1999) (internal quotation and citation omitted).  If the Court concludes that "the non-moving

party has failed to make a sufficient showing on an essential element of h[is] case with respect to which []he has the burden of proof," then the moving party is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

However, because this case involves review of a final agency action under the APA, the standard set forth in Rule 56(c) does not apply due to "the limited role of a court in reviewing the administrative record." *Hospital of Univ. of Penn. v. Sebelius*, 2009 WL 1976527 at *2 (D.D.C. July 10, 2009) (*citing North Carolina Fisheries Ass'n v. Gutierrez*, 518 F. Supp. 2d 62, 79 (D.D.C. 2007)). Under the APA, agencies resolve factual issues to arrive at a decision that is supported by the administrative record. In contrast, the limited function of the district court in APA actions is only "to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Id.* (*citing OccidentalEng'g Co. v. INS*, 753 F.2d 766, 769-70 (9th Cir. 1985)). In this case summary judgment thus serves as the "mechanism for deciding, as a matter of law, whether agency action is supported by the administrative record and is not in derogation of the APA's standard of review." *Id.* (*citing Richards v. INS*, 554 F.2d 1173, 1177 & n.28 (D.C. Cir. 1977)).

Pursuant to the Administrative Procedure Act, 5 U.S.C. §706(2)(2000), "judicial review of the final decision of a military BCNR is limited to a determination of whether the BCNR's decision is 'arbitrary and capricious, contrary to law, or unsupported by substantial evidence.'"*Roberts v. Harvey*, 441 F. Supp.2d 111, 118 (D.D.C. 2006) (*quoting Frizelle v. Slater*, 111 F.3d 172, 176 (D.C. Cir. 1997)). Moreover, as stated below, the final decisions of military BCNRs are reviewed under "an unusually deferential application of the 'arbitrary and capricious' standard." *Kreis v. Secretary of the Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989) (citations omitted). "This high degree of deference arises from the statutory language authorizing a

Secretary of a military department-acting through civilian boards-to correct military records

'when the Secretary considers it necessary to correct an error or remove an injustice.'" Roberts,

441 F. Supp. 2d at 119 (quoting 10 U.S.C. §1552(a)(1)(2000)).

Even more specifically, when it comes to review of the decisions by civilian boards of the

military, the *Kreis* court reasoned:

> It is simply more difficult to say that the Secretary has acted arbitrarily if he is authorized
> to act 'when he considers it necessary to correct an error or remove an injustice,' 10
> U.S.C. §1552(a), than it is if he is required to act whenever a court determines that certain
> objective conditions are met, i.e., that there has been an error or injustice.

*Kreis*, 866 F.2d at 1514.

Accordingly, policy considerations weigh heavily in favor of the Court giving the widest

possible latitude to the armed services in the administration of personnel matters. *See Orloff v.*

*Willoughby*, 345 U.S. 83 (1953). This Court cannot substitute its judgment for that of the BCNR

even though reasonable minds could have reached a different conclusion. *Calloway v. Harvey*,

590 F. Supp. 2d 29, 35 (D.D.C. 2008) ( *citing Sanders v. United States*, 594 F.2d 804, 813 (Ct.

Cl. 1979)). Only the most egregious board decisions will fail this deferential standard of review.

*Roberts*, 441 F. Supp. 2d at 119. Furthermore, by challenging a Secretary's decision not to change

a record, Plaintiff has the burden of proving "by cogent and clearly convincing evidence" that the

decision was the result of a material legal error or injustice. *McDougall v. Widnall*, 20 F. Supp.

2d 78, 82 (D.D.C. 1998). In such event, the abuse of administrative discretion rises to the level of

legal error which merits judicial relief.  A party seeking review of a board decision bears the

burden of overcoming the strong, but rebuttable, presumption that administrators of the military,

like other public officers, discharge their duties correctly, lawfully and in good faith. *Id.*; *Roberts*

*v. Harvey*, 441 F. Supp.2d 111, 118 (D.D.C. 2006). Even more specifically, a party challenging

the decision of a board must establish that the board did not consider or respond to an argument that did not appear to be "frivolous on its face and could affect the BCNR's ultimate disposition." *Roberts*, 441 F. Supp.2d at 119 (*quoting Frizelle*, 111 F.3d at 177). In short, the Court's task in reviewing military personnel decisions under the APA is to determine whether "the decision making process was deficient, not whether [the] decision was correct." *Dickson v. Sec'y of Defense*, 68 F.3d 1396, 1405-06 (D.C. Cir. 1995) (*quoting Kreis*, 866 F.2d at 1511).

## V. LEGAL ANALYSIS

### A. THE BCNR'S DETERMINATION TO DENY PLAINTIFF'S REQUEST FOR THE CORRECTION OF HIS NAVAL RECORD SHOULD BE UPHELD BECAUSE IT WAS BASED ON FACTS AND EVIDENCE IN THE ADMINISTRATIVE RECORD

Plaintiff seeks relief from the BCNR's determination pursuant to the APA. Under this statute, the Court must uphold the BCNR's decisions unless they were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Thus, in order to reverse the BCNR determination under the APA, the Court must be unable "to conclude that the [agency whose action is under review] examined the relevant data and articulated a satisfactory explanation for its action [,] including a rational connection between the facts found and the choice made." *Kreis v. Sec'y of Air Force*, 406 F.3d 684, 686 (D.C. Cir. 2005) (internal quotation and citation omitted). The "agency's explanation need not be a model of analytic precision to survive a challenge" under the APA; rather, "[a] reviewing court will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Frizelle v. Slater*, 111 F.3d 172, 176 (D.C. Cir. 1997) (internal quotation and citation omitted).

**1. The Standard of Review of a Military Correction Board Decision is Extremely Deferential**

Federal courts may review Department of the Navy actions under the Administrative Procedures Act (APA), 5 U.S.C. § 706.  Courts in this Circuit employ "an unusually deferential application of the 'arbitrary and capricious' standard of the [APA]" where the agency at issue is a part of the military.  *Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000); *Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989). "This deferential standard is calculated to ensure that courts do not become a forum for appeals by every soldier dissatisfied with [an agency's action], a result that would destabilize military command and take the judiciary far afield of its area of competence." *Id.*

However, this exaggerated degree of deference is unnecessary if "the issue before the court does not involve a military judgment requiring military expertise."  This high deference standard afforded to military agencies ensures that courts do not become embroiled in the debates of disappointed soldiers and Marines, which would tend to destabilize the effectiveness of military operations. *Cone* , 233 F.3d at 793 (*citing Orloff v. Willoughby*, 345 U.S. 83, 94 (1953)). With this framework, courts proceed with extreme caution and will only disturb the clearest violations of law and regulation. Kries, 866 F.2d at 1515. Otherwise, the judiciary may inadvertently interfere with military operations and inappropriately decide what administrative measures are in the interest of good order and discipline. *See Cone*, 223 F.3d at 793.

When reviewing a matter under the APA, a court's inquiry is not to determine facts, but to determine whether the agency made its decision based on facts that are supported in the administrative record. *See Fuller v. Winter*, 538 F. Supp. 2d 179, 185 (D.D.C. 2008) (*citing Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769-70 (9th Cir. 1985)). Even under ordinary

circumstances, the "scope of review under the arbitrary and capricious standard is narrow and a

court is not to substitute its judgment for that of the agency." *Fuller*, 538 F. Supp. 2d at 185

(*quoting Motor Vehicle Mfrs. Assn, of U.S. Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29,

43 (1983) ("the agency must examine the relevant data and articulate a satisfactory explanation

for its action including a 'rational connection between the facts found and the choice made'")

(internal citations omitted)). Consequently, "summary judgment serves as the mechanism for

deciding, as a matter of law, whether the agency action is supported by the administrative record

and otherwise consistent with the APA standard of review." *Fuller*, 538 F. Supp. 2d at 185

(*citing Richard v. INS*, 554 F.2d. 1173, 1177 & n.28 (D.C. Cir. 1977)).

  The Secretary of a military agency acts through a civilian Board "to correct an error or

remove an injustice" when - in the Secretary's judgment - the correction is necessary. *See* 10

U.S.C. § 1552(a); *see also Kries*, 866 F.2d at 1514. Thus, acting on the Secretary's behalf, a

Board does not simply determine whether an error or an injustice is present in a record. Id. It

must determine - in its judgment - that there are circumstances that necessitate removing the

error. *Kries*, 866 F.2d at 1514 (distinguishing between Secretary's discretion to remove a known

error, and removal as a necessity to correct an error). *Id.* The legal inquiry for a court under the

APA is to review whether the correction board reached its decision in an arbitrary or capricious

manner, or if the decision is not supported by the administrative record. *Id.* Indeed, a court in an

autonomous review might arrive at a different result, but reasonable minds can reach differing

conclusions. *Calloway v. Harvey*, 590 F.Supp.2d 29, 35 (D.C.C. 2008) (*citing Sanders v. United

States*, 594 F.2d 804, 813 (Ct. Cl. 1979)). Accordingly, the critical question here is whether the

Board followed the proper procedure, applied facts rationally connected to its decision, and

provided a reasoned basis for its decision. *Motor Vehicle Mfrs. Assn, of U.S. Inc.*, 463 U.S. at 43.

Moreover, there is a "strong but rebuttable presumption that administrators of the military, like other public officials, discharge their duties correctly, lawfully, and in good faith." *Frizzelle v. Rodney*, 111 F.3d 172, 177 (D.C. Cir. 1997) (*quoting Collins v. United States*, 24 Ct.Cl. 32, 38 (1991); aff'd, 975 F.2d 869 (Fed. Cir. 1992)).

Accordingly, a service-member challenging a military correction board decision must overcome this presumption of regularity with clear and convincing evidence "that action is warranted to correct a material error, inaccuracy or injustice." *Cone*, 223 F.3d at 793; *accord Frizzelle* 111 F.3d 172. In the absence of such a showing, military correction boards' decisions must stand. Id. Upon careful review of the BCNR's decision in this matter, the actions of the BCNR were in accordance with law; thus, the July, 22 2009 decision should be upheld and summary judgment should be granted in favor of the government.

Here, Plaintiff contends that the BCNR failed to utilize the proper regulatory standard of review when it decided not to remove Plaintiff's adverse fitness report and references to his removal from the FY07 LtCol Promotion List. DN (Docket Number) 1 (Complaint) at ¶ 24. Specifically, Plaintiff argues that the correct standard of review was "whether the contents of the fitness report were incontrovertible matters of fact" rather than "whether the contents of the fitness report were sufficiently objective." DN 1 at ¶ 22. Contrary to Plaintiff's assertions, the standard of review for fitness report appeals is whether an applicant has produced sufficient evidence to prove there was probable material error, substantive inaccuracy, or injustice in the report. MCO 1610.11C, 10(a).

Plaintiff challenges the following five adverse statements contained in his adverse fitness report: 1) that he "routinely failed to comply with Squadron, Marine Aircraft Group (MAG), Wing and Office of the Chief of Naval Operations (OPNAV) directives pertaining to aircrew

standardization, human factors, and incident reporting."  DN 1 at ¶ 10(a);  2) that he "routinely

directed and approved deceptive flight scheduling, wherein scheduled missions were never

intended to be flown as indicated on the schedule."  DN 1 at ¶ 10(b);  3) that he "withheld critical

information from his squadron commanding officer regarding the January 2006 flight incident"

and that "he failed to activate a mishap investigation, which was warranted by the likely degree

of injury to ground personnel and damage to a vehicle during the evolution."  DN 1 at  10(c);  4)

that he "withheld information from his commanding officer about a July 2005 flight incident

involving a pilot later involved in an Oct 2005 class B mishap , and from the Field Fight

Performance Board (FFPB)....The above deceptions covered up significant markers in a series of

incidents, and masked a pattern of substandard performance by a pilot who ultimately became the

mishap section leader and one of the 10 fatalities in the Feb 2006 class A mishap."  DN  1 at  ¶

10(d); and 5) that he "fostered an extremely poor command climate, which prevented junior

members from raising flight safety concerns."  DN 1 at ¶ 10(e).

**B. THE BCNR CORRECTLY DETERMINED THAT PLAINTIFF FAILED TO
COMPLY WITH SQUADRON, MAG, WING, AND OPNAV DIRECTIVES**

**1.  Aircrew Standardization.**

The Board found that the RS for the adverse fitness report, the Commanding Officer

(CO), MAG-29 stated that Plaintiff routinely failed to comply with directives pertaining to

aircrew standardization.  DN 1 at ¶ 10(a), AR 2.  In challenging the allegation that he failed to

comply with directives concerning aircrew standardization, Plaintiff argues that the Command

Investigation (CI) did not make mention of any aircrew standardization issues.  DN 1 at ¶ 13.

Essentially, Plaintiff argues that because the wording "aircrew standardization" was absent from

the CI, he was not derelict in complying with regulations pertaining to aircrew standardization.

While the CI did not recite the term "aircrew standardization," the Board found that the investigation revealed instances of severe lapses in the development of flight standard operating procedures (SOP), aircrew training and briefings that evince Plaintiff's failure to maintain aircrew standardization.

The Board agreed with the CI determination that the proximate cause of the mishap was the airborne collision between the second aircraft, designated Condor 11, with the section leader, designated Condor 10. AR 148. Specifically, the Investigating Officer (IO) determined the collision resulted from the Condor 11 aircrew's lack of situational awareness and relative proximity to Condor 10. As a result of the IO's investigation the Board correctly attributed Condor 11's lack of situational awareness to the section leader's failure to create uniform expectations about the conduct of the mishap flight and the Condor 11 aircrew's failure to clarify expectations about the conduct of the mishap flight, and a failure to employ standard formation principles. AR 166, 214-15.

In addition, two service members involved in the mishap did not receive training in Combat Survival, Water Survival or Underwater Egress, which are mandatory for all aircrew personnel. AR 183. The IO noted that a workable Marine Heavy Helicopter (HMH) Detachment flight SOP might have facilitated uniform expectations with regard to ad hoc flight plans on the mishap flight. AR 220.

More importantly, Plaintiff acknowledged the lack of an SOP for flight operations in Horn of Africa (HOA). AR 3. Although he began to develop a flight operations SOP for the detachment, the BOARD found that it was never formally published. AR 228. The Fitness Reports in question therefore accurately reflected Plaintiff's performance in this regard. Accordingly, the Board appropriately took these facts into consideration in denying Plaintiff's

request for correction of his military records.

## 2.  Human Factors Council.

The RS for the adverse fitness report, the CO, MAG-29 commented that Plaintiff routinely failed to comply with regulations pertaining to human factors.  DN 1 at  10(a),  AR 2. Plaintiff states pursuant to MCO 5100.29A, he was not required to conduct human factors councils at the detachment level.  DN 1 at  ¶ 13.  However, the COMMARFORCENT specifically noted in his endorsement to the CI, that "Det-B did not conduct monthly Human Factors Councils," which were "mandated by MCO 5100.29."  The IO also found that "HMH-464 Detachment Bravo did not conduct monthly Human Factors Councils which are convened to identify human factors that could adversely affect a pilot or aircrewman's performance."  AR 171.

While MCO 5100.29A mandates that squadrons and squadron commanders are responsible for monthly Human Factors Councils, it does not absolve small detachments from the responsibility if the command maintains an Aviation Safety Officer (ASO).  Det-B maintained an ASO billet.  AR 169.   Among the primary duties of an ASO's is to convene monthly Human Factors Councils.  MCO 5100.29A, Encl (2),  2(h).  In addition, as Det-B had an ASO, it was required to maintain a Command Aviation Safety Program.  AR 169; OPNAV 3750.6R  202. Among the components of a Command Aviation Safety Program are human factors councils. OPNAV 3750.6R  205(f).  The Fitness Reports in question therefore accurately reflected Plaintiff's performance in this regard.  Accordingly, the Board appropriately took these facts into consideration in denying Plaintiff's request for correction of his military records.


## 3.  Incident Reporting.

The RS for the adverse fitness report commented that Plaintiff routinely failed to comply with directives pertaining to incident reporting.  DN 1 at ¶ 10(a),  AR 2.  Plaintiff argues his incident reporting responsibilities stated in "the [CI] was internally inconsistent on the issue." AR 2.   He argues that the Findings of Fact (FOF) #22 of the CI determined that no investigation was required for a January 2006 incident.   On January 18, 2006, a CH-53E helicopter of HMH-464 Det-B was involved in a Class B aviation mishap in which a High Mobility Multipurpose Wheeled Vehicle (HMMWV) was dragged and dropped resulting in three injured U.S. Soldiers and damage to the HMMWV.  AR 171.   2d MAW SOP for Safety and Standardization required the Det-B to report all aircraft mishaps and potentially significant incidents through the 2d MAW Aviation Flash Report Database.  AR 171.  HMH-464 Det-B did not release an aviation Flash Report concerning the incident as required by 2d MAW SOP.  AR 220.

Additionally, Plaintiff suggests that, because CI opinion #31 placed the responsibility for reporting the incident upon the CO, HMH-464, he was absolved from reporting the incident.  DN 1 at ¶ 13.  However, opinion #30 explicitly states that Det-B did not release an Aviation Flash Report.  AR 220.  The CO, HMH-464 maintained overall responsibility for the actions of its subordinate units.  Because the CO, HMH-464 maintained overall responsibility for the actions of its subordinate units, Det-B's own responsibilities were not absolved from direct reporting or insulate Plaintiff from reporting the incident through an Aviation Flash Report as required by 2d MAW SOP.  The Fitness Reports in question therefore accurately reflected Plaintiff's performance in this regard.   Accordingly, the Board appropriately took these facts into consideration in denying Plaintiff's request for correction of his military records.

## C. PLAINTIFF ROUTINELY DIRECTED AND APPROVED DECEPTIVE
FLIGHT SCHEDULING

The CO, MAG-29 stated that Plaintiff "routinely directed and approved deceptive flight

scheduling, wherein scheduled missions were never intended to be flown as indicated on the

schedule."  DN 1 at ¶ 10(b),  AR 2.  Plaintiff argues that there is no evidence to support the

allegation that he routinely directed and approved deceptive flight scheduling.  DN 1 at ¶ 14.

Ultimately, the CI determined that "[Plaintiff] and the officers of the [Det-B] failed to recognize

serious safety of flight issues, or if they did recognize them failed to take appropriate action to

remediate or correct the issues."  AR 146.   Plaintiff's admission that due to the complexity of the

assigned Personnel Recovery Missions from CJTF-HOA, the limited number of missions in an

unknown threat environment, he scheduled several missions within the same flight in order to

cover potential flight contingencies and to ensure combat proficiency.  AR 3, 228.  While his

actions may have been well intentioned, at a minimum they served to mislead and may have

potentially contributed to the mishap.  Furthermore, Plaintiff implicitly acknowledges the

potentially misleading/deceptive nature of his actions when he states "at no time was the intent of

this practice to be deceptive towards flight scheduling or mission briefing requirements."  AR 3,

228.  Whether intended to deceive or not, they left flight crews minimally prepared.  AR

215-217.

The mishap flight was scheduled for four missions:  section Confined Area landings

(CALS), Terrain Flight (TERF), Aerial Refueling (AR), and Casualty Evacuation (CASEVAC)

standby.  AR 188.  This type of flight scheduling resulted in unclear expectations from unplanned

and unbriefed missions.  AR 216.  It was determined that fundamental changes in the initial AR

mission changed the inherent operational risk of a mission and left Plaintiff and the mishap

aircrews to underestimate the hazards associated with conducting the various missions.  AR 217.

This resulted in the mishap aircraft failing to employ standard formation principles and sufficient

separation.  AR 217.  The bottom line is whether Plaintiff's approval of flight scheduling was

intentionally deceptive or simply misleading, it resulted in unclear expectations and assessments

of risks that were contributing factors to the mishap.  AR 215-217.  The Fitness Reports in

question therefore accurately reflected Plaintiff's performance in this regard.    Accordingly, the

Board appropriately took these facts into consideration in denying Plaintiff's request for

correction of his military records.

**D.     PLAINTIFF'S ACTIONS CONCERNING THE JANUARY 2006 FLIGHT
        INCIDENT.**

**1.  The Witholding Of Critical Information.**

The CO, MAG-29 commented that Plaintiff withheld critical information from his

Squadron CO (CO, HMH-464) regarding a January 2006 flight incident and failed to activate a

mishap investigation.  DN 1 at ¶ 10(c),  AR 7.  The incident involved a CH-53E helicopter of

HMH-464 Det-B, which dragged and dropped a HMMWV, resulting in injuries to three U.S.

soldiers and damage to the HMMWV.  AR 171.  Due to the injuries sustained by the three

soldiers, the incident is considered a Class B Aviation Mishap.  OPNAV 3750.6R,  313(b).

Plaintiff responds to the allegation by stating that the CI findings do not support the allegation.

DN 1 at ¶ 15.  Moreover, Plaintiff suggests that an August 16, 2006 letter from Col Gerard Fisher

to the Commandant, which he submitted to the BCNR, demonstrates Plaintiff did in fact notify

his CO.  DN 1 at  ¶ 15.  Col Fisher was the CO for Camp Lemonier, Djibouti and not the CO for

HMH-464, his parent unit.  AR 110.  The adverse fitness report specifically alleged that Plaintiff

withheld critical information from his Squadron CO, not the CO, Camp Lemonier.  Plaintiff,

therefore, failed to provide evidence sufficient to suggest he did not withhold critical information

from the CO, HMH-464.   The Fitness Reports in question therefore accurately reflected

Plaintiff's performance in this regard.   Accordingly, the Board appropriately took these facts into

consideration in denying Plaintiff's request for correction of his military records.

**2.  Plaintiff Failed To Activate A Mishap Investigation.**

The Board determined that the incident, as a Class B Aviation Mishap, required a mishap

investigation.  OPNAV 3750.6R  601-603.  The Board found that the Plaintiff failed to conduct

an investigation into the incident.  AR 171.  The Fitness Reports in question therefore accurately

reflected Plaintiff's performance in this regard.  Accordingly, the Board appropriately took these

facts into consideration in denying Plaintiff's request for correction of his military records.

**E. PLAINTIFF'S ACTIONS CONCERNING THE JULY 2005 FLIGHT  INCIDENT.**

The CO, MAG-29 stated that Plaintiff withheld information about a July 2005 flight

incident from the CO, HMH-464, an aircraft mishap board and a FFPH. DN 1 at  10(d),  AR 7.

Plaintiff states the command investigation contains no facts to support this allegation. DN 1 at

16.  However, Plaintiff's rebuttal to the adverse fitness report states he viewed the "occurrence

[as] not uncommon on a turbulent day such as that one."  AR 3.  In addition, he determined the

"incident as insignificant and [that] not addressing it with anyone was not an attempt to hide it."

AR 3.  In July 2005, the section leader for the mishap was the copilot in an Aerial Refueling

(AR) incident while Det-B was enroute to Marine Corps Base Twenty-nine Palms for a Revised

Combined Arms Exercise (RCAX) that would serve as a rehearsal for their upcoming

CJTF-HOA deployment.  AR 147, 170.  The July 2005 mishap occurred when the CH-53E

helicopter's main rotor tips impacted the right aerial refueling drogue of a C-130 airplane.

Plaintiff has, therefore, failed to provide evidence sufficient to suggest he did not withhold the

facts and circumstances of this incident to the CO, HMH-464, an aircraft mishap board or the FFPH.  The Fitness Reports in question therefore accurately reflected Plaintiff's performance in this regard.   Accordingly, the Board appropriately took these facts into consideration in denying Plaintiff's request for correction of his military records.

## F. PLAINTIFF'S ACTIONS FOSTERED AN EXTREMELY POOR COMMAND CLIMATE.

The CO, MAG-29 commented that Plaintiff as the Det-B OIC, fostered an extremely poor command climate, which prevented junior members from raising flight safety concerns.  DN 1 at ¶ 10(e),  AR 7.  Plaintiff counters the allegation by stating that the findings of fact provide no context for proving he fostered a poor command climate.  DN 1 at ¶ 17.  The IO determined that Det-B's command climate was not conducive to professional aviation operations because it did not foster critical thinking among the junior officers and free and open discussion of flight safety related issues.  AR 219.  In stark contrast, instead of fostering professional development among his subordinates, Plaintiff habitually berated junior officers.  AR 219.  Plaintiff has, therefore, failed to provide evidence sufficient to suggest he did not maintain an extremely poor command climate in light of the CI findings and opinions.  The Fitness Reports in question therefore accurately reflected Plaintiff's performance in this regard.  Accordingly, the Board appropriately took these facts into consideration in denying Plaintiff's request for correction of his military records.

## G. THE BCNR ADOPTED THE CORRECT STANDARD OF REVIEW.

Plaintiff alleges that the PERB, in its advisory opinion articulated a new standard of review, "sufficient objectivity."   He alleges the standard found in MCO P1610.7F,  1003.1(c) requires fitness reports contain only fact and objective judgments based upon Marine Corps

Standards.  DN 1 at ¶ 12.  In addition, he states that  4003(6)(b)(5)  cautions RSs to exercise

extreme care to ensure derogatory material is an incontrovertible matter of fact.  DN 1 at  ¶ 12.

He uses these references to suggest that his only burden is to show that the statements of fact in

the adverse fitness report were subject to dispute.  AR 20.  In fact, Plaintiff states he went beyond

his burden and demonstrated the comments were demonstrably false.  AR 20.

Contrary to Plaintiff's assertions, the standard of review for fitness report appeals is

whether an applicant has produced sufficient evidence to prove there was probable material error,

substantive inaccuracy, or injustice in the report.  MCO 1610.11C,  10(a).  An administrative

investigation such as a CI, shall arrive at findings of fact only if supported by a preponderance of

the evidence.  JAGINST 5800.7E,  214(b)(1).  The fitness report was founded upon the results of

a completed and approved CI.  As such its findings are clear and not conjecture.  In addition,

BCNR clarified for Plaintiff, in its response to his request for reconsideration, that it had applied

the appropriate standard of review.  AR 14-15.

In fact, Plaintiff's Fitness Reports are presumed to be "administratively correct,

procedurally complete and valid according to performance evaluation policy defined in [the

MCO P1610.7F]." MCO P1610.11C,  5(a).   As there is a presumption of regularity, the burden

of proof rests with Plaintiff (MCO P1610.11C,  5(b)) to justify deletion, amendment, or

replacement of a fitness report  When the record before the BCNR "fails to demonstrate the

existence of probable material error or injustice," the Board "relies on a presumption of regularity

to support the official actions of public officers…." 32C.F.R. § 723.4; *Cone*, 223 F.3d at 793.

Plaintiff must produce evidence of probable material error, substantive inaccuracy, or injustice.

The burden is met when he has presented an amount of relevant evidence tending to prove that

his allegations contained in the application are more likely true than not.  MCO P1610.11C,

10(a). When an applicant presents no such evidence to the contrary - and the record itself contains no clear error or injustice - there is "a strong but rebuttable presumption that administrators, of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith." *Frizelle*, 111 F.3d at 177. Plaintiff has failed to meet this burden.

## H. THE RO PROPERLY RESOLVED ALL FACTUAL INCONSISTENCIES IN FAVOR OF THE RS

An RO is charged with the responsibility of ensuring proper evaluation methods are exercised by RSs. As such, an RO can direct RSs to "clarify or modify reports that do not adhere to policy, appear to contain inflated marks, insufficient justifications, or ambiguous and unsupported comments." MCO 1610.11C, 2004.3(d).

Additionally, in situations, where an RS refuses to modify a report, the RO may nonconcur with the report and submit amplifying information. MCO 1610.11C, 2004.3(d). More importantly, because Plaintiff alleged factual inconsistencies in his rebuttal to his fitness report, the RO is vested with the authority to assess the report and to adjudicate factual differences between the RS's evaluation and Plaintiff's rebuttal statement. MCO P1610.7F, 2004.3(f). The RO reviewed the fitness report and the MRO's rebuttal and resolved all factual inconsistencies in favor of the RS. AR 2.

## VII.   CONCLUSION.

For these reasons stated above, this Court should grant Defendant's Motion For Summary

Judgment.

Respectfully submitted,

RONALD C. MACHEN JR.,Bar # 447889
United States Attorney
for the District of Columbia


RUDOLPH CONTRERAS ,Bar # 434122
Chief, Civil Division


By: _____/s_____
BENTON PETERSON ,Bar #1029849
Assistant U.S. Attorney
555 4th Street, N.W.
Washington, D.C. 20530
(202) 514-7238
Benton. Peterson@usdoj.gov

Of Counsel:
Captain Ji Y. Kwon, US Marine Corps
Office of the Judge Advocate General
General Litigation (Code 14)
1322 Patterson Ave, SE Suite 3000
Washington Navy Yard, DC 20374-5066
(202) 685-8389