UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MAJ BARTLETT LUDLOW, )<br>   )<br>   Plaintiff, )<br>   )<br>   v. )<br>   )<br>RAYMOND E. MABUS, JR., Secretary of the )<br>Navy, )<br>   )<br>   Defendant. )<br>_____ ) | Civil No. 10-0236 (HKK) |

**REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND OPPOSITION TO PLAINTIFF'S CROSS-MOTION
<u>FOR SUMMARY JUDGMENT</u>**

<u>**INTRODUCTION**</u>

As set forth below, and in our moving papers, the Defendant is entitled to judgment as a matter of law because there is no genuine issue as to any material fact. The Court should therefore grant Defendant's Motion for Summary Judgment (Docket Number (DN). 7) and deny Plaintiff's Cross-Motion for Summary Judgment (DN. 10). Plaintiff prepared a single document entitled Plaintiff's Cross-Motion for Summary Judgment and Opposition to Defendant's Motion for Summary Judgment. [1]

This action arises out of Plaintiff's unsuccessful petition to the Board for Correction of Naval Records (BCNR) to remove an adverse fitness report from his official military record. Plaintiff was issued the fitness report following his performance as the HMH-464 (Marine Heavy Helicopter Squadron-464) Detachment B (Det-B) Officer-in-Charge (OIC), while Det-B was

---

1 Plaintiff also attached to his motion "Plaintiff's Statement of Material Facts to Which There is No Genuine

1

deployed in support of the Combined Joint Task Force Horn of Africa (CJTF-HOA) in Djibouti. AR 1-7.  The fitness report was issued after an investigation found Plaintiff's performance as the Det-B OIC lacking and directly attributable to a fatal aviation mishap that resulted in the Detachment losing two CH-53E helicopters and the deaths of eight Marines and two Airmen. AR 146.

Plaintiff alleges two fundamental errors committed by Defendant.  First, that the BCNR failed to recognize that Plaintiff's adverse fitness report was issued contrary to requisite regulations, and second, that the Board utilized the wrong standard of review in denying his petition for relief.  DN 1, ¶ 22, 24.  Defendant has moved for summary judgment on Plaintiff's claim because:  (1) The BCNR determination to deny Plaintiff's correction of his naval record was based on facts and evidence in the administrative record; (2) In arriving at its decision, the BCNR adopted the correct standard of review.

The substantive law supporting Defendant's motion for summary judgment is fully stated in Defendant's prior supporting memorandum of law, *see* DN 7, and is incorporated herein by reference.

I.      **THE STANDARD OF REVIEW.**

Marine Corps Regulations require that a Reporting Senior (RS) issuing an adverse fitness report "exercise extreme care to ensure that [] derogatory material is an incontrovertible matter of fact or is a matter acknowledged to be true by the [Marine Reported On]."  Marine Corps Order (MCO) P1610.7E ("PES Regulation"), ¶ 4003.5.  The PES Regulation provides "policies, procedures, and standards for the operation and maintenance of the Marine Corps Performance Evaluation System, and the submission of fitness reports…" PES Regulation, Cover Page, ¶ 1.

---

Dispute" which appears to be solely a response to Defendant's Statement of Material Facts Not in Dispute.

2

Where an adverse report is issued and the Marine Reported On (MRO) disagrees with the RS as to matters of fact in the report, the Reviewing Officer (RO) is responsible for resolving any inconsistencies and disagreements. PES Regulation, ¶ 5004.1(a). Ultimately, the RO is responsible for adjudicating any factual differences between the RS's evaluation and the MRO's statement. PES Regulation, ¶ 2004.3(d).

Regulations concerning the convening, conduct and findings of a Command Investigation (CI) are found in the Manual of the Judge Advocate General of the Navy (JAGMAN). JAGINST 5800.7E. A CI must arrive "at its findings of fact only if supported by a preponderance of the evidence." JAGINST 5800.7E, ¶ 0214(b)(1).

In the present case, Brigadier General R. E. Milstead, the Commanding General for the 2d Marine Aircraft Wing was the RO for plaintiff's adverse fitness report. AR 1. When adjudicating the factual differences between the RS's evaluation and Plaintiff's rebuttal statement, the RO resolved all factual inconsistencies in favor of the RS in light of the substantiated findings of the CI. AR 2.

When an MRO believes that a fitness report is inaccurate or unjust he may appeal the report to the Performance Evaluation Review Board (PERB). MCO 1610.11C ("Appeals Regulation"), ¶ 5(b). The PERB is the initial review office for fitness report appeals submitted to the BCNR. Appeals Regulation, ¶ 4(a). The PERB also has authority to correct fitness reports. Appeals Regulation, ¶ 5c. In making its final determination on an appeal the PERB presumes a fitness report to be administratively correct, procedurally complete, and valid according to applicable orders. Appeals Regulation, ¶ 5(a). The burden of proof to the contrary rests with the applicant. Appeals Regulation, ¶ 5(c), 10(a). To justify deletion, amendment, or replacement of

a report, the applicant must produce evidence of probable material error, substantive inaccuracy, or injustice. Appeals Regulation, ¶ 10(a).

Plaintiff has argued that the proper standard of review for fitness report appeals is to determine whether the derogatory material was a matter of incontrovertible fact. DN 1, ¶ 22 and DN 10, p. 2. Contrary to Plaintiff's assertions, the standard of review for an appeal of a fitness report before the PERB is whether an applicant has produced sufficient evidence to prove there was probable material error, substantive inaccuracy, or injustice in the report. Appeals Regulation, 10(a).

On July 16, 2008, the PERB considered Plaintiff's appeal and determined the fitness report was administratively correct and procedurally complete as written and filed. AR 31. The PERB determined that the "fitness report was founded on the results of a completed and approved, lengthy command investigation," the results of which were clear and not conjecture. AR 32. More importantly, the PERB determined the CI "findings of fact" could be considered as "incontrovertible matter[s] of fact." AR 32.

As denied PERB appeals are routinely forwarded to the BCNR, Plaintiff's appeal and the PERB's report were submitted to the BCNR for review. Appeals Regulation, ¶ 9(h) and AR 33. The BCNR may deny a petition without a hearing if it determines that the evidence of record fails to demonstrate the existence of probable material error or injustice. 32 C.F.R. § 723.3(e)(1)&(2). In making that decision, the BCNR is permitted to rely on a presumption of regularity to support the official actions of public officers and, in the absence of substantial evidence to the contrary, will presume that they have properly discharged their official duties. 32 C.F.R. § 723.3(e)(2).

In challenging the BCNR decision, Plaintiff alleges that the HQMC advisory opinion articulated the wrong standard of review and that the BCNR incorrectly adopted this standard when it substantially concurred with the advisory opinion. DN 10, p. 2. The HQMC advisory opinion states "[t]he [adverse] materials upon which this fitness report was based were *sufficiently objective* to support the fitness report." (emphasis added) AR 29. These words do not suggest a new or novel standard of review, but rather a statement of fact and approval concerning the nature of the adverse materials and findings of fact. As an unobserved adverse fitness report, it goes without saying that the report was based on objective facts and not subjective opinion. Notwithstanding this interpretation, the BCNR in its July 22, 2009 decision clarified to the Plaintiff that in its September 4, 2008 decision it had applied the correct standard of review, "regardless of the wording in the [HQMC advisory opinion].²

## II. REPEATED AERIAL MISHAPS AND SUBSEQUENT INVESTIGATION FINDINGS PAINT A BROAD PICTURE OF INSUFFICIENT LEADERSHIP THAT AMPLY JUSTIFIES THE RATIONALE OF THE BCNR DECISION

For this case to be properly disposed of, the Court must simply find that the BCNR's decisions, "minimally contain a rational connection between the facts found and the choice made." *Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (*citation omitted*); *Frizelle v. Slater*, 111 F.3d 172, 176 (D.C. Cir. 1997), *Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1514-15 (D.C. Cir. 1989); *Miller v. Lehman*, 801 F.2d 492, 497 (D.C. Cir. 1986). Moreover, to prevail in challenging a Secretary's decision not to change a record, Plaintiff has the substantial burden of proving "by cogent and clearly convincing evidence" that

---

² Plaintiff's June 22, 2009 Reconsideration Request letter to BCNR (AR 19-24) and BCNR's July 22, 2009 decision letter to Plaintiff (AR 15) both attribute the phrase "sufficient objectivity" to the Report of the PERB. This phrase is attributed to the HQMC Advisory

the decision was the result of a material legal error or injustice.  The facts of this case, as determined by the Administrative Record, Plaintiff's fitness report, the PERB and BCNR decisions, and relevant Navy and Marine Corps regulations all serve to suggest a pattern of mismanagement and mishap committed by Plaintiff sufficient to support the BCNR decision.

An analysis of the facts that shaped the BCNR decision under the Plaintiff's misapplied "incontrovertible" standard is inappropriate and would distort the "strong but rebuttable presumption that administrators of the military, like other public officials, discharge their duties correctly, lawfully, and in good faith." *Frizzelle v. Rodney*, 111 F.3d 172, 177 (D.C. Cir. 1997) (*quoting Collins v. United States*, 24 Ct.Cl. 32, 38 (1991); aff'd, 975 F.2d 869 (Fed. Cir. 1992)). Still, the facts of this case indicate serious deficiencies in the unit led by Major Ludlow.

Det-B suffered at least five aerial mishaps in an eight month period between 2005 and 2006.  AR 147, 170.  First, in July 2005, a Det-B CH-53E helicopter's main rotor tips impacted the right aerial refueling drogue of a C-130 airplane.  AR 170.  Then, in October 2005, Major Ludlow and Det-B experienced a subsequent Class B mishap also involving aerial refueling.  The second incident resulted in a Field Flight Performance Board, after which Major Ludlow was unable to fly from October 26, 2005 – December 9, 2005.  AR 170.  Although Major Ludlow conducted a Crew Resource Management training class while he was grounded, two more aerial incidents occurred shortly after resuming flights in January 2006.  AR 171.  First, during an exercise utilizing Night Vision Goggles (NVGs), a Det-B CH-53E helicopter landed on a pile of rocks, punching four holes in the bottom of the aircraft.  *Id.*  The damage required six days of operational level airframes repair.  *Id.*  On January 18, 2006, another NVG operation went awry,

---

Opinion.  AR 29.

when another Det-B CH-53E helicopter executing a dual point external lift, dragged and dropped a High Mobility Multi-Wheeled Vehicle (HMMWV), resulting in injuries to three U.S. Soldiers and damage to the HMMWV. *Id.* Finally, on February 17, 2006, a Class A Aviation Mishap involving two CH-53E helicopters assigned to Det-B occurred off the coast of Djibouti resulting in ten military members (eight Marines and two Airmen) perishing.

During his tenure as Det-B OIC, Plaintiff presided over a unit that lacked a published Standard Operating Procedures (SOP) guide for the Horn of Africa (HOA). AR 3, 228. While Det-B maintained an Aviation Safety Officer billet, it failed to conduct formal Human Factors Councils, which "identify human factors that could adversely affect a pilot or aircrewman's performance." AR 171. Additionally, Det-B repeatedly scheduled multiple missions for the same flight. AR 3. This contributed to aircrew confusion as scheduled missions were never intended to be flown as indicated on the schedule. AR 2. As noted in the CI, the February 17, 2006 Class A mishap flight was scheduled for four missions: section Confined Area Landings (CALS), Terrain Flight (TERF), Aerial Refueling (AR), and Casualty Evacuation (CASEVAC) standby. AR 188. Moreover, as concluded in the CI, this mishap was "the result of a cascading chain of events that began with failures by the leadership of HMH-464 and HMH-464 Detachment Bravo (Det-B) to instill, inculcate, and emphasize at all levels of the command the need for proper Operational Risk Management and sound general aviation safety practices." AR 146. Taken together, such deficiencies when paired with Det-B's record of repeated aerial incidents and mishaps, suggest a unit plagued with poor leadership and command climate that rationally supports the BCNR's decision to deny Plaintiff's petition.

## III.     CONCLUSION.

For these reasons stated above, this Court should grant Defendant's Motion For Summary Judgment and deny Plaintiff's cross-motion for Summary Judgment.

        Respectfully submitted,

        RONALD C. MACHEN JR., Bar # 447889
        United States Attorney
        for the District of Columbia

        RUDOLPH CONTRERAS, Bar # 434122
        Chief, Civil Division

By: _____/s_____
BENTON PETERSON, Bar #1029849
Assistant U.S. Attorney
555 4th Street, N.W.
Washington, D.C. 20530
(202) 514-7238
Benton.Peterson@usdoj.gov

Of Counsel:
Captain Ji Y. Kwon, US Marine Corps
Office of the Judge Advocate General
General Litigation Division (Code 14)
1322 Patterson Ave, SE Suite 3000
Washington Navy Yard, DC 20374-5066
(202) 685-8389