# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |
|---|
| **MAJOR BARTLETT D. LUDLOW,** |
| **Plaintiff,** |
| v. |
| **HONORABLE RAY MABUS, Secretary of the Navy,** |
| **Defendant.** |

Civil Action 10-00236 (HHK)

## MEMORANDUM OPINION

Plaintiff Bartlett D. Ludlow, a Major in the U.S. Marine Corps, brings this action against Ray Mabus, in his official capacity as Secretary of the Navy, under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. Ludlow contends that the Board for Correction of Naval Records erred by refusing to remove from Ludlow's service record an adverse fitness report related to a 2006 helicopter crash. Before the Court are the parties' cross-motions for summary judgment [## 7, 10]. Upon consideration of the motions, the oppositions thereto, and the administrative record, the Court concludes that Ludlow's motion must be granted and the Secretary's motion must be denied.

## I. BACKGROUND

### A.   The Board for Correction of Naval Records

10 U.S.C. § 1552 authorizes the secretary of a military department to "correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice." *Id*. § 1552(a)(1). In most cases, "such corrections shall be

made by the Secretary acting through boards of civilians of the executive part of that military department," and "under procedures established by the Secretary concerned." *Id*. § 1552(a)(1), (3). The Board for Correction of Naval Records ("the Board") operates pursuant to this authority. *See* 32 C.F.R. § 723.1–.11. The Board's function is "to consider applications properly before it for the purpose of determining the existence of error or injustice in the naval records of current and former members of the Navy and Marine Corps, to make recommendations to the Secretary or to take corrective action on the Secretary's behalf when authorized." *Id*. § 723.2.

**B.    Factual Background**

On February 17, 2006, a pair of Marine Corps helicopters were involved in a crash off the coast of Djibouti; ten service members were killed. A.R. at 9, 99. At the time, Ludlow was the officer in charge of the unit to which the helicopters belonged. A.R. at 9. A few days later, the Marine Corps initiated an command investigation of the incident, which resulted in a report dated April 11, 2006. On May 6, John F. Sattler, Commander, Marine Forces Central Command, endorsed the report, finding that "Ludlow's failures as the [officer in charge] are directly related to this mishap," and that "[a]ppropriate administrative and/or disciplinary action should be taken." A.R. 100–01.

The next month, Ludlow received an adverse fitness report based on the results of the command investigation. A.R. 2–7. Ludlow submitted a rebuttal to the adverse fitness report, arguing that he performed his duties in a competent and professional manner. A.R. 3–6. Ludlow then received a letter from his commanding general stating that Ludlow was not qualified for a promotion to lieutenant colonel (for which he had been approved prior to the accident); Ludlow submitted a rebuttal to that letter as well. A.R. 102–08. In February 2007, the Commandant of

the Marine Corps recommended to the Secretary that he remove Ludlow from the lieutenant colonel promotion list for fiscal year 2007. A.R. 9–12. The Secretary did so. A.R. 23.

In May 2008, Ludlow petitioned the Performance Evaluation Review Board ("PERB"), which is the forum of first resort for Marine Corps fitness report appeals, to remove the adverse fitness report from his service record. After receiving an advisory opinion from the Judge Advocate Division ("JAD") on Ludlow's petition, the PERB concluded that the fitness report was administratively and procedurally correct and complete; accordingly, it found that the fitness report should remain part of Ludlow's record, and forwarded Ludlow's petition to the Board for final action. A.R. 31–33. Ludlow petitioned the Board for relief, *see* A.R. 77–98, alleging that the report contained numerous factual inaccuracies and seven "material errors." A.R. 78.

In September 2008, after giving Ludlow an opportunity to review and respond to the JAD and PERB opinions, the Board denied Ludlow's petition. A.R. 25–26. The Board found that Ludlow's evidence was "insufficient to establish the existence of probable material error or prejudice," and "substantially concurred" with the PERB and JAD opinions. A.R. 26. In June 2009, Ludlow sought reconsideration of the Board's decision, arguing that it had applied the wrong standard of review in reaching its initial determination. The Board denied Ludlow's request on the ground that it does not reconsider its decisions absent "new and material evidence or other matter not previously considered." which Ludlow had not produced. A.R. 14. It also stated that it had applied "the correct standard of proof" in denying Ludlow's petition. A.R. at 14. Ludlow commenced this action in October 2009, seeking review of the Board's decision under the APA.

## II. LEGAL STANDARD

Decisions of the military review boards are, like other federal agency action, subject to review under the APA, *Frizelle v. Slater*, 111 F.3d 172, 176 (D.C. Cir. 1997), which requires a reviewing court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).[1] However, the final decisions of military correction boards are reviewed under "an unusually deferential application of the 'arbitrary and capricious' standard." *Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989); *accord Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000). This is both because the statutory language authorizing the Secretary to correct errors accords him expansive discretion, *see Kreis*, 866 F.2d at 1514 (citing 10 U.S.C. § 1552(a)), and because "the courts [should] not become a forum for appeals by every [service member] dissatisfied with his or her ratings, a result that would destabilize military command and take the judiciary far afield of its area of competence." *Cone*, 223 F.3d at 793. Even so, like all other agency decisions, those of the review boards must be explained sufficiently to allow for effective review. *See Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1404–06 (D.C. Cir. 1995).

## III. ANALYSIS

The parties' arguments focus largely on two questions: whether the Board (and JAD and PERB) applied the proper standard of review, and whether the Board's decision had factual

---

[1] Summary judgment is the appropriate mechanism to resolve an APA challenge to agency action. *See Stuttering Found. of Am. v. Springer*, 498 F. Supp. 2d 203, 207 (D.D.C. 2007) (citing *Richards v. INS*, 554 F.2d 1173, 1177 & n.28 (D.C. Cir. 1977)). Because, however, "the district judge sits as an appellate tribunal" in such cases, *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001), the usual summary judgment standard does not apply.

support. But Ludlow also advances, albeit briefly, another argument: that the Board's opinion is too cursory to allow for effective judicial review. He asserts that the Board's reasoning is unclear and that its resolution of the facts cannot be discerned from its opinion. Pl.'s Mem. in Opp'n to Def.'s Mot. & in Supp. of Pl.'s Cross-Mot. for Summ. J. ("Pl.'s Mem.") at 5. The Secretary does not respond to this argument. Regardless, Ludlow is correct.

It is axiomatic that before the Court can review an agency's decision, it must know what the agency decided, and why. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196–97 (1947); *Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1404–06 (D.C. Cir. 1995); *Pub. Citizen, Inc. v. FAA*, 988 F.2d 186, 197 (D.C. Cir. 1993). Thus, the APA's arbitrary-and-capricious standard "mandat[es] that an agency . . . provide an explanation that will enable the court to evaluate the agency's rationale at the time of decision." *Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 654 (1990). This is true even under the unusually deferential standard accorded to military review boards. *See Dickson*, 68 F.3d at 1404–06 (holding that an Army Board for Correction of Military Records decision was arbitrary and capricious because it "omitted the critical step [of] connecting the facts to the conclusion").

Here, the Board's opinion denying Ludlow's application for correction does not allow the Court to discern its reasoning. The opinion is two pages long, and contains one single paragraph of (cursory) analysis.[2] By contrast, Ludlow's statement to the Board in support of his application

---

[2] The entirely of the Board's analysis is contained in this paragraph:

> Although the fitness report at issue did not expressly state you were relieved of command, the Board noted that the reporting senior [officer] did state . . . that you were "not qualified to command" and that [he] "would not allow [you] to lead Marines in [his] command in the future." The Board was unable to find that your primary duty was not "future operations officer" as shown in section A, item 4 of the

5

ran to twenty-one pages, *see* A.R. 78–98, and identified seven discrete "material errors" associated with the adverse fitness report, A.R. at 78–79, 88–98, and numerous alleged factual inaccuracies. A.R. at 80–88. His responses to the PERB and JAD opinions likewise addressed in detail the report's alleged factual inaccuracies. *See* A.R. 40–45, 57–62, 68–72.[3] Before this Court, Ludlow presents thirteen pages of argument as to the factual basis and merit of the Board's conclusion, *see* Pl.'s Mem. at 5–18, which the Secretary counters with eleven of his own. *See* Def.'s Mem. in Supp. of Def.'s Mot. for Summ. J. ("Def.'s Mem.") at 14–21; Def.'s Reply to Pl.'s Mem. at 5–7. And the administrative record is five hundred and thirty one pages long. The mismatch between the length and scope of the Board's decision and the volume of materials presented to the Board and this Court is telling.

More importantly, however, the Board's decision is simply silent as to most of the issues raised by Ludlow. For example, the fitness report stated that Ludlow "routinely failed to comply with . . . directives pertaining to . . . human factors." A.R. 2.[2] Similarly, Sattler wrote in his endorsement that Ludlow's unit "did not conduct monthly Human Factors Councils as mandated

---

> fitness report. Finally, the Board found the provisions of [naval regulations] regarding the concept of privilege of information adduced in aircraft mishap board proceedings did not excuse your deceptions alleged in the contested report.

A.R. 26.

[3] The administrative record appears to contain three versions of Ludlow's response to the PERB and JAD opinions, but they are substantially identical. *See* A.R. 40–45, 57–62, 68–72.

[2] "Human factors is a discipline that incorporates a study of human behaviors, limitations and capabilities into the design of products, systems and equipment." *Winters v. Fru-Con Inc.*, 498 F.3d 734, 741 (7th Cir. 2007). Marine human factors councils "are convened to identify human factors that could adversely affect a pilot or aircrewman's performance." A.R. 171.

by [Marine Corps Order] 5100.29." A.R. 147. Ludlow's position is both that he was not in fact required by Marine Corps regulations to hold formal human factor councils, and that he held informal human factor councils anyway. Pl.'s Mem. at 8; *see* A.R. 69, 84–85. But how did the Board resolve this issue? Did it conclude that Ludlow was required to convene formal monthly councils? Did it accept that informal meetings would be sufficient, but determine that Ludlow never held any? Or did it accept Ludlow's human-factors argument in the entirety but nevertheless conclude that he had not demonstrated that the report should be excised from his record? There is simply no way for the Court to know.[3] And the same is true as to most of Ludlow's other arguments.

Consequently, the Secretary's extensive rebuttal of Ludlow's arguments (and, for that matter, Ludlow's arguments themselves) are simply beside the point; because the Court's task is "to identify whether 'the decision making process was deficient, not whether [the] decision was correct,'" *Dickson*, 68 F.3d at 1405 (quoting *Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1511 (D.C. Cir. 1989)), the Court cannot sustain an unexplained agency decision "on the basis of . . . theories that the agency might have adopted and findings that (perhaps) it might have made." *Envtl. Def. Fund, Inc. v. EPA*, 898 F.2d 183, 189 (D.C. Cir. 1990); *see also Wisc.'s Envtl. Decade, Inc. v. SEC*, 882 F.2d 523, 528 (D.C. Cir. 1989) (stating that reviewing courts cannot "accept the rationalizations first advanced by counsel in . . . litigation [or] entertain[] arguments not relied upon by the agency itself" (citing *SEC v. Chenery Corp.*, 318 U.S. 80 (1943))). The

---

[3] The Secretary contends that Marine Corps regulations require units like Ludlow's to convene monthly human factors councils. But, even if that is true, the Secretary's assertion that "the Board appropriately took these [regulations] into consideration" in denying Ludlow's petition, Def.'s Mem. at 16, is mere speculation, unsupported by the Board's own opinion.

parties, perhaps without realizing it, are not arguing about the merits of the Board's decision at all; they are debating whether the fitness report was flawed. But that question is not ultimately before the Court, which must decide whether *the Board's decision* was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In light of the Board's cursory treatment of Ludlow's arguments, the Court must conclude that it was. Accordingly, this action will be remanded to the Board for a more reasoned explanation of its decision. *See Dickson*, 68 F.3d at 1407 (remanding to the Army Board for Correction of Military Records because "[w]here an agency 'has failed . . . to explain the path it has taken, we have no choice but to remand for a reasoned explanation.'" (quoting *Tex Tin Corp. v. EPA*, 935 F.2d 1321, 1324 (D.C. Cir. 1991))); *Benvenuti v. Dep't of Defense*, 587 F. Supp. 348, 356–57 (D.D.C. 1984) (same).

## IV. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment [#7] must be denied and plaintiff's cross-motion for summary judgment [#10] must be granted. This action will be remanded to the Board for proceedings not inconsistent with this memorandum opinion. A separate order is docketed concurrently with this opinion.

Henry H. Kennedy, Jr.
United States District Judge